**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **SANDRA PORTER,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:10-CV-888-M** |
| | § | |
| **QUEST DIAGNOSTICS,** | § | |
| | § | |
| **Defendant.** | § | |

<u>**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**</u>

Pursuant to Special Order No. 3-251, this case was referred for pretrial management, including the determination of non-dispositive motions and the issuance of findings, conclusions, and recommendations on dispositive motions. Before the Court is *Defendant's Motion for Summary Judgment and Memorandum of Law*, filed August 16, 2011 (doc. 29). Based on the relevant filings, evidence, and applicable law, the motion should be **GRANTED**.

**I. BACKGROUND**

Plaintiff Sandra Porter sues her former employer, Defendant Quest Diagnostics, Inc., for race and sex discrimination[1] in violation of Title VII of the Civil Rights Act of 1964 (Title VII) and 42 U.S.C. § 1981, and for age discrimination in violation of the Age Discrimination in Employment Act (ADEA). (doc. 1, pp. 1-5.) Her *pro se* complaint also appears to assert retaliation and harassment/hostile work environment claims. (*Id.*)

Plaintiff, an African-American female, began her employment with Defendant in August 2008, as a full-time billing coordinator at an initial pay rate of $14.49 per hour. (Mot. App., pp. 4,

---

[1] It appears that Plaintiff is claiming both disparate treatment and disparate impact under Title VII. (doc. 1, pp. 1-2, 4-5.)

19-20.)  She was 49-years-old at the time she was interviewed and hired by Pamela Cumbie, a 59-year-old female.  (*Id.* at 4, 19-20.)  Plaintiff initially reported directly to Cumbie but began reporting to Cindy Anguiano, who had assumed the role of team leader at the billing center, in April 2009 .  (*Id.* at 4 -5, 7, 20.)  Plaintiff's primary job as a billing coordinator was to enter data related to Medicare, Medicaid, and third party insurance bills.  (*Id.* at 7, 20.)

To ensure accurate and efficient data entry, Defendant has a quality assurance/quality control department (QA/QC) that regularly audits its billing employees' data entries by examining a random sample of requisitions and comparing them to the corresponding data a billing employee has entered on the system.  (*Id.* at 23-25.)  Data entry employees are required to enter at least 90 requisitions per hour with an error rate of 5% or below; an error rate above 5% does not meet quality assurance standards and requires counseling by a QA/QC coordinator.  (*Id.* at 23-24.)  The QA/QC coordinator meets with the billing employee to discuss audit results and address any issues and may provide appropriate training.  (*Id.* at 23.)

In July 2009, a QA/QC audit revealed that Plaintiff's error rate was above the acceptable rate. (*Id.* at 24, 35.)  A QA/QC coordinator, Jo Linda Gibson, met with Plaintiff to discuss the audit results, and to provide her with feedback and guidance on error avoidance.  (*Id.* at 36-38.)  Plaintiff appeared disinterested in the guidance and repeatedly said, "I dispute."  (*Id.* at 24, 36-38.)  Gibson therefore asked Plaintiff's supervisor, Anguiano, to address the issues regarding the quality and accuracy of her work.  (*Id.*)  On July 29, 2009, Anguiano met with Plaintiff to address the results of the QA/QC audit and to provide her with guidance on error avoidance in data entry.  (*Id.* at 36-38.)

A few days later, on August 5, 2009, Anguiano met with Plaintiff and other billing employees to discuss their monthly feedbacks.  (*Id.* at 36.)  Plaintiff was uncooperative and

confrontational when presented with her monthly feedback, voiced disagreement with the feedback, insisted that she did not need Anguiano's help or training, and stated that she just keyed in what was given to her. (*Id.* at 36-37.) She refused to sign the monthly feedback form and walked out of the meeting before its conclusion. (*Id.*) Anguiano made several attempts to communicate with Plaintiff with no success. (*Id.* at 20.)

On August 14, 2009, Anguiano completed a "Summary of Discussion" memorializing the conversations between herself and Plaintiff regarding Plaintiff's work production, work quality and workplace conduct. (*Id.* at 20, 36-38.) Anguiano addressed Plaintiff's argumentative demeanor, her refusal to accept constructive criticism, and her refusal to acknowledge her mid-year review and monthly feedback. (*Id.* at 36-38.) Anguiano also reiterated her commitment to assist Plaintiff with her work needs. (*Id.* at 37.) Since the Summary of Discussion was an informal performance management tool, it was not placed in Plaintiff's personnel file, and did not impact her pay, benefits, or job duties. (*Id.* at 18, 20.)

On May 18, 2009, Plaintiff contacted Defendant's compliance hotline and alleged that Cumbie was harassing her on the basis of her age by following her around and by standing at her desk and looking at her. (*Id.* at 20.) Defendant's human resources department investigated the matter by interviewing several employees, including Plaintiff, Cumbie, Anguiano, and Deidre Cain. (*Id.*) Plaintiff was not cooperative during the investigation, and when asked for specific examples of harassment, she alleged only that Cumbie followed her around and watched her. (*Id.*) Cumbie noted during her interview that she had very little interaction with Plaintiff since Anguiano had assumed the role of Plaintiff's supervisor, viewed Plaintiff as a good employee, and had no reason

to follow up with her regarding any issues.[2]  (*Id.*)  The human resources department concluded that Plaintiff's allegations were not corroborated, and even if true, did not amount to harassment and/or hostile work environment on the basis of her age.  (*Id.*)

On September 2, 2009, Plaintiff requested leave under the Family and Medical Leave Act (FMLA).  (*Id.* at 21.)  Defendant approved her leave through November 24, 2009, and advised her that if she needed any additional time off, she would have to be approved for short-term disability. (*Id.*)  On November 25, 2009, at the conclusion of her approximately three-months of leave, Plaintiff resigned from her job via letter.  (*Id.* at 39.)  The letter cited harassment, hostile environment, and emotional distress as the reasons for her resignation.  (*Id.*)  At the time of her resignation, there were 30 data entry employees at the billing center, approximately 46% of whom were over the age of 40, 50% were African American, and 93% were female.  (*Id.* at 21.)  Defendant did not hire anyone to replace Plaintiff, and her job duties were absorbed by existing data entry employees.  (*Id.*)

On January 15, 2010, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC).  (*Id.* at 40-41.)  She alleged that she was "issued a written warning" and "forced to resign from [her] position" based on her age and " in retaliation for having complained of being harassed because of [her] age" in violation of the ADEA.  (*Id.*)  On February 4, 2010, the EEOC dismissed the charge and issued a right-to-sue letter.  (*Id.* at  42-44.)  Plaintiff filed this action *pro se* on May 3, 2010.  (*See* doc.1.)  On October 12, 2010, an attorney entered an appearance on her behalf.  (*See* doc. 13.)

---

[2]  In February 2009, while still reporting to Cumbie, plaintiff received her 2008 performance review. (App., pp. 31-34.) The performance review, completed and signed by Cumbie, rated Plaintiff's performance as "Achieves Expectations."  (*Id.*) When asked to provide examples of Plaintiff's strengths, Cumbie wrote, "Works hard to complete her assignments, working overtime when available and going beyond the levels of production and quality consistently." (*Id.* at 33.) Based on this performance review, Plaintiff received a 2% pay raise from $14.49 per hour to $14.69 per hour. (*Id.* at 18, 20.)

Defendant moves for summary judgment on Plaintiff's discrimination and retaliation claims under Title VII; her discrimination, retaliation, and hostile work environment claims under the ADEA; and her discrimination claim under § 1981. The motion is now ripe for consideration.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324. To carry this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-movant must show that the evidence is sufficient to support a resolution of the factual issue in her favor. *Anderson*, 477 U.S. at 249.

"The parties may satisfy their respective burdens by 'citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials.'" *Rooters v. State Farm Lloyds*, 428 F.App'x 441, 445 (5th Cir. 2011) (citing Fed. R. Civ. P. 56(c)(1)). While

all of the evidence must be viewed in a light most favorable to the motion's opponent, *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions satisfy the non-movant's summary judgment burden, *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992).  Summary judgment in favor of the movant is proper if, after adequate time for discovery, the motion's opponent fails to establish the existence of an element essential to her case and as to which she will bear the burden of proof at trial.  *Celotex*, 477 U.S. at 322-23.

### III.  DISCRIMINATION CLAIMS UNDER TITLE VII

Defendant contends Plaintiff failed to exhaust her administrative remedies as to her race and sex discrimination claims by not including them in her EEOC charge.  (Mot. Br., pp. 11-12.)

Title VII makes it unlawful for employers to discriminate against individuals with respect to their "compensation, terms, conditions, or privileges of employment, because of [their] race, color, religion, sex, or national origin."  42 U.S.C. § 2000e–2(a).  Before an individual can pursue a Title VII claim in federal court, she must exhaust her available administrative remedies by filing a charge with the EEOC.  *See Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378–79 (5th Cir. 2002).[3]  If the individual files a charge with the EEOC, the scope of her subsequent judicial complaint is limited to the "scope of the EEOC investigation which can reasonably be expected to grow out of the charge."  *See Sanchez v. Standard Brands Inc.*, 431 F.2d 455, 466 (5th Cir. 1970).

---

[3] "Although filing of an EEOC charge is not a jurisdictional prerequisite, it 'is a precondition to filing suit in district court.'" *Taylor*, 296 F.3d at 378–79 (quoting *Dao v. Auchan Hypermarket*, 96 F.3d 787, 789 (5th Cir. 1996)); *see also Gates v. City of Dallas*, Tex., 1997 WL 405144, at **1-2, n.1 (N. D. Tex. July 15, 1997) (Fitzwater, J.) (noting a split in the Fifth Circuit on whether exhaustion is merely a prerequisite to suit, and thus subject to waiver and estoppel, or whether it is a requirement that implicates subject matter jurisdiction.)

This reasonable expectation rule requires that the allegations in a subsequent judicial complaint be "like or related to" allegations made in the EEOC charge. *See Vuyanich v. Republic Nat'l Bank of Dallas*, 723 F.2d 1195, 1201 (5th Cir. 1984).

Here, Plaintiff only checked the box for age discrimination on her EEOC charge and failed to make any allegations related to race and gender discrimination. The few allegations made in her charge relate only to her age and retaliation claims. An investigation reasonably expected to grow out of the charge would not encompass race or gender discrimination. *See Thomas v. Tex. Dep't of Criminal Justice*, 220 F.3d 389, 395 (5th Cir. 2000) (an EEOC charge did not encompass a race claim where the charge only alleged gender as the theory of discrimination). Because Plaintiff failed to exhaust her administrative remedies on her Title VII race and gender discrimination claims, Defendant is entitled to summary judgment with respect to those claims.

## IV.  DISCRIMINATION UNDER THE ADEA

Defendant also argues that there is no direct evidence of age discrimination and that the circumstantial evidence is insufficient under the burden-shifting framework outlined in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973).  (*See* Mot. Br., pp. 12-25.)

The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).  "A plaintiff may prove age discrimination through either direct or circumstantial evidence." *See  Joseph v. City of Dallas*, 277 F.App'x 436, 439 (5th Cir. 2008) (citing *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 896 (5th Cir. 2002)); *see also Gross v. FBL Fin. Servs., Inc.*, 129 S.Ct. 2343, 2351 (2009) (plaintiff must prove by a preponderance of the evidence, either direct

or circumstantial, that age was the "but-for" cause of the challenged employment decision).

## A.  Direct Evidence

Defendant argues that none of the actions and comments Plaintiff presents in support of her claim constitute direct evidence of discrimination.  (*See* Mot. Br., pp. 12-13.)  "Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption."  *Sandstad*, 309 F.3d at 897.  For workplace comments to qualify as direct evidence of age discrimination, the comment "must be direct and unambiguous, allowing a reasonable jury to conclude without any inferences or presumptions that age was an impermissible factor in the [adverse employment action]."  *E.E.O.C. v. Tex. Instruments Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996)).  Workplace comments provide sufficient evidence of discrimination if they are (1) related to the protected class of persons of which the plaintiff is a member; (2) proximate in time to the complained of adverse action; (3) made by an individual with authority over the employment decision at issue; and (4) related to the employment decision at issue.  *See Moss v. BMC Software Inc.*, 610 F.3d 917, 929 (5th Cir. 2010).

Here, Plaintiff appears to support her claim with assertions that QA/QC picked up a larger stack of Plaintiff's work than usual in conducting its weekly audit; that Anguiano completed the Summary of Discussion and delivered it to her; that Cumbie and Anguiano had a mean attitude towards her; that on one occasion, Cumbie, Anguiano, and Gary Dawson came rushing into the lunch room and surrounded her, but she excused herself and left the lunchroom; and that Cumbie would look or peep at her, would follow her to the restroom and go to the stall next to hers while slamming the door, and would have lunch in the lunch room at the same time as her.  (Mot. App., pp. 9-12, 36-39.)  Plaintiff also states that on an unidentified date, when she revealed her age in a

conversation with a co-worker, Cumbie commented, "I didn't know you were that old.  You look younger." (*Id.* at 13.)  On another occasion, when Cumbie was passing out candy to employees and Plaintiff declined to take it, Cumbie stated "you should take some candy because it would make your production go higher, because all of the rest of the young people, they [are] already keying faster." (*Id.*)  Although the comments include observations about Plaintiff's age, they do not imply that her age was the reason for any adverse action, and there is no evidence that they were proximate in time to any adverse action.  *See Sandstad*, 309 F.3d at 897.  Nor are the actions or comments direct and unambiguous such that a reasonable jury could conclude without any inferences or presumptions that age was an impermissible factor in any adverse employment action.  *See Tex. Instruments Inc.*, 100 F.3d at 1181.  Plaintiff has failed to offer any direct evidence of discrimination.

## B. Circumstantial Evidence

Defendant also argues that there is insufficient circumstantial evidence of discrimination. (Mot. Br., pp. 14-25.)  Where a plaintiff offers circumstantial evidence of discrimination, her age discrimination claim is subject to the familiar *McDonnell Douglas* burden-shifting framework.  *See Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010) (while the Supreme Court has not definitively resolved whether the *McDonnell Douglas* framework applies to ADEA claims, "we are bound by our circuit precedent applying McDonnell Douglas to age discrimination cases.").  Under the framework, a plaintiff must first establish a *prima facie* case of discrimination. *See Moss v. BMC Software Inc.*, 610 F.3d 917, 922 (5th Cir. 2010) (citing *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007)).  To establish a *prima facie* case of age discrimination, a plaintiff must show that (1) she was within the protected class; (2) she was qualified for the position; (3) she suffered an adverse employment decision; and (4) she was replaced by someone younger or

- 9 -

treated less favorably than similarly situated younger employees. *Smith v. City of Jackson, Miss.*, 351 F.3d 183, 196 (5th Cir. 2003). If the plaintiff establishes a *prima facie* case, "the burden shifts to the employer to provide a legitimate, non-discriminatory reason for the employment decision." *Moss*, 610 F.3d at 922 (citing *Berquist*, 500 F.3d at 349). If the employer articulates a legitimate, non-discriminatory reason for the employment decision, the burden shifts back to the employer "to show that the reason given is merely pretextual." *Id.* (citing *Jackson*, 602 F.3d at 378–79).

    1. *Prima Facie* Case

Defendant argues that the evidence is not sufficient for a reasonable jury to conclude that Plaintiff suffered an adverse employment action, or that she was replaced by someone younger or treated less favorably than similarly situated younger employees. (Mot. Br. at 17-22.)

    a. *Adverse Employment Action*

Adverse employment actions in the discrimination context include "only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating." *Mitchell v. Snow*, 326 F.App'x 852, 854–55 (5th Cir. 2009) (quoting *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007)). Employment actions that do not affect job duties, compensation, or benefits are not adverse employment actions. *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004) (citations omitted).

The evidence shows that Plaintiff resigned from her position after approximately three months of FMLA leave. (Mot. App., pp. 21, 39.) The evidence is insufficient for a reasonable jury to conclude that Plaintiff was constructively discharged from her position, i.e. her working conditions were "so intolerable that a reasonable employee would feel compelled to resign." *See Brown v. Bunge Corp.*, 207 F.3d 776, 782 (5th Cir. 2000); *see also Hooker v. Victoria's Secret*

*Stores, Inc.*, 281 F.3d 1278, 1278 n.3 (5th Cir. 2001) (holding that constructive discharge is an

ultimate employment action for ADEA purposes). Her contentions about QA/QC's audit and about

Cumbie's actions and comments, even taken as true, would not lead a rational jury to find that a

reasonable employee in her working conditions would feel compelled to resign. (*See* Mot. App., pp.

9-10, 13-15, 36-39.) To constitute constructive discharge, the working environment must be

"something more" than that needed for a harassment or hostile work environment claim; it must be

"a 'worse case' harassment scenario, harassment ratcheted up to the breaking point.'" *Easterling*

*v. Sch. Bd. of Concordia Parish*, 196 Fed. App'x 251, 253 (5th Cir. 2006) (quoting *Pennsylvania*

*State Police v. Suders*, 542 U.S. 129, 141 (2004)).

With respect to distribution of work assignments, Plaintiff alleges that she sometime had to

do other department work besides data entry, but she concedes that her job duties remained the same

throughout her employment with Defendant. (Mot. App., p. 7.) There is evidence that the Summary

of Discussion was an informal evaluation and did not impact her pay, job duties, or benefits. (*Id.*

at 20.) Plaintiff testified that her pay was not reduced in any way during her employment, and that

she ended up getting a raise in May of 2009. (*Id.* at 18.) There is no evidence that the audit, even

if based on a larger stack of Plaintiff's work, would lead to an erroneous or exaggerated error rate,

or that the resulting error rate impacted her job duties, compensation or benefits. Finally, rude

treatment by an employer does not qualify as an adverse employment action forming the basis of

an age discrimination claim. *See Hernandez v. Crawford Bldg., Material Co.*, 321 F.3d 528, 532

n.2 (5th Cir. 2003) (rude treatment by employer, ostracism by coworkers, criticisms of work or

conduct, reprimands, loss of some job duties, formal discipline, requests that employee perform new

job tasks, and low evaluations that could lead to missed pay increases, do not constitute ultimate

employment decisions).  Plaintiff has failed to create a genuine material fact issue with respect to the third element of her *prima facie* case.[4]

b.  *Replaced or Treated Differently*

As noted, to establish a *prima facie* case of discrimination, an employee may show that she was treated differently than similarly situated employees.  *Smith*, 351 F.3d at 196.  "An employee who proffers a fellow employee as a comparator must demonstrate that the employment actions at issue were taken 'under nearly identical circumstances.'"  *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259–60 (5th Cir. 2009) (quoting *Little v. Republic Refining Co., Ltd.*, 924 F.2d 93, 97 (5th Cir. 1991).  "The employment actions being compared will be deemed to have been taken under nearly identical circumstances when employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable employment histories." *Id.* (citation omitted).

To show that she was treated differently than similarly situated employees under the age of 40, Plaintiff points to an exchange during her EEOC intake.  (Resp. Br., p. 16.)  In that exchange, Plaintiff was asked whether all data entry employees, black and non-black, under 40 and over 40, were accused of not meeting their data entry quota.  (Mot. App., pp. 17-18, 45.)  Plaintiff responded that "everybody sometimes do not meet their quotas."  (*Id.*)  When asked if the employees were written up, she responded with a "maybe."  (*Id.*)  This exchange is insufficient to support a jury finding that Plaintiff was treated differently than similarly situated employees.  It shows that she herself does not know whether other employees were treated differently.

---

[4]  Plaintiff's response brief appears to contain largely verbatim portions of arguments from Defendant's brief.  (*See* Resp. Br.)  While some words appear to have been changed, added, or removed, other statements remained unchanged and therefore support Defendant's motion.  (*See* e.g. Mot. Br., pp. 18, 20.)

Because there is no genuine material fact issue regarding at least two elements of Plaintiff's *prima facie* case, Defendant is entitled to summary judgment on her ADEA claim.

2.  Legitimate Non-Discriminatory Reason

Even if there was genuine material fact issue with respect to her *prima facie* case, Defendant has offered evidence showing that there is a legitimate non-discriminatory reason for any adverse action.  The evidence shows that any adverse action was taken because of Plaintiff's insubordinate conduct  and her refusal to accept constructive criticism from QA/QC personnel and her supervisor regarding her work production and quality.  The Fifth Circuit has noted that an employer's proffered reason need not be persuasive or even credible, only legitimate and non-discriminatory.  *See Bodenheimer v. PPG Indus.*, 5 F.3d 955, 958 (5th Cir. 1993).  Since Defendant has met its burden, Plaintiff now has the burden to raise a genuine material fact issue by showing that the proffered reason is a pretext for discrimination.  *See Moss*, 610 F.3d at 929.

3.  Pretext

"A plaintiff may show pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Jackson*, 602 F.3d at 378–79 (citation and internal quotation marks omitted).  The plaintiff must produce evidence from which a rational fact-finder could conclude that her age was the "but-for" cause of the challenged employer decision.  *Gross*, 129 S.Ct. at 2351.  Here, Plaintiff has failed to produce such evidence.  Her assertions regarding Cumbie's actions and comments, even if true, are insufficient to survive summary judgment.  *See Jackson*, 602 F.3d at 380 (5th Cir. 2010).  The evidence of record shows that Cumbie herself was over the age 59 when she hired Plaintiff and that over 46% of the workforce in the billing data entry department was over the age of 40 when Plaintiff resigned.  (Mot. App., pp.

4, 19-21.)  Since Plaintiff has failed to meet her ultimate burden of raising a genuine material fact

issue that Defendant's proffered explanation was mere pretext, summary judgment should be granted

in favor of Defendant on Plaintiff's age discrimination claim under the ADEA.

## IV.  DISCRIMINATION UNDER § 1981

Defendant moves for summary judgment on Plaintiff's discrimination claim under § 1981

on the ground that she cannot establish the adverse employment action of her *prima facie* case of

retaliation.  (Mot. Br., pp. 15-16, n.6.)

### A.  Analytical Framework

"As a general matter, section 1981 serves as a deterrent to employment discrimination."

*Carroll v. General Accident Ins. Co. of Am.*, 891 F.2d 1174, 1176 (5th Cir. 1990).  It serves as a

means of punishing employers who discriminate on the basis of race and compensating employees

who are victims of racial discrimination.  *See id.*  Claims for racial discrimination under § 1981 are

analyzed under the same well established burden-shifting paradigm as Title VII claims. *Jenkins v.*

*Methodist Hosps. of Dallas, Inc.*, 478 F.3d 255, 260 (5th Cir. 2007).  In the context of a § 1981 race

discrimination claim, "the plaintiff must establish by a preponderance of the evidence a *prima facie*

case of discrimination."  *Nichols v. Lewis Grocer*, 138 F.3d 563, 566 (5th Cir. 1998).  A plaintiff

may establish a *prima facie* case of racial discrimination through either direct evidence, statistical

proof, or the test established by the Supreme Court in *McDonnell Douglas*.  Under the framework

set forth in *McDonnell Douglas*, Plaintiff must show that she (1) belongs to a protected group; (2)

was qualified for her position; (3) suffered an adverse employment action; and (4) was replaced by

or was treated less favorably than a similarly qualified individual outside the protected class.  *See*

*McDonnell Douglas*, 411 U.S. at 802.

If the plaintiff establishes a *prima facie* case, the employer must then articulate a legitimate non-discriminatory reason for the challenged employment action. *Jackson v. Watkins*, 619 F.3d 463, 466 (2010).  Once the defendant has responded with a legitimate, non-discriminatory reason,

> the plaintiff must then offer sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motive[s] alternative).

*Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 341 (5th Cir. 2005) (citation omitted); *see also Watkins*, 619 F.3d at 466.   Under the pretext alternative, the plaintiff must introduce "some evidence, whether circumstantial or direct, that permits the jury to believe that the reason was false and that illegal discrimination was the actual reason." *Nichols*, 138 F.3d at 566. Under the mixed-motive alternative, a plaintiff need only present sufficient evidence for a reasonable jury to conclude that the protected characteristic was a motivating factor for the employment practice. *Desert Palace Inc. v. Costa*, 539 U.S. 90, 101 (2003).

## B.  *Prima Facie* Case

Defendant argues that for the same reasons outlined with respect to her age discrimination claim, Plaintiff cannot establish the adverse employment action element of her *prima facie* case. (Mot. Br., pp. 15-16 n.6.)

An adverse employment action in the context of a § 1981 discrimination claim consists of "'ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating." *Pegram*, 361 F.3d at 282 (quoting *Felton v. Polles*, 315 F.3d 470, 486 (5th Cir. 2002)).  "[A]n employment action that 'does not affect job duties, compensation, or benefits' is not an adverse employment action." *See id.* (quoting *Banks v. East Baton Rouge Parish Sch. Bd.*, 320

F.3d 570, 575 (5th Cir. 2003)).  As discussed, none of the actions forming the basis of Plaintiff's complaint qualify as adverse employment actions necessary to form a *prima facie* case of discrimination.   Defendant is therefore entitled to summary judgment on Plaintiff's race discrimination claim under § 1981 as well.

## V.  HOSTILE WORK ENVIRONMENT UNDER THE ADEA

Defendant next moves for summary judgment on Plaintiff's hostile work environment claim under the ADEA, if any.  (Mot. Br., pp. 25-29; *see also* Mot. App., pp. 12-13, 40.)

In the Fifth Circuit, a plaintiff may bring a hostile work environment claim based on age discrimination under the ADEA.  *See Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 441 (5th Cir. 2011).  "A plaintiff advances such a claim by establishing that (1) [s]he was over the age of 40; (2) the employee was subjected to harassment, either through words or actions, based on age; (3) the nature of the harassment was such that it created an objectively intimidating, hostile, or offensive work environment; and (4) there exists some basis for liability on the part of the employer."  *Id.* (citing *Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 834–35 (6th Cir. 1996)).

 "In order to satisfy the third element . . . a plaintiff must demonstrate that the harassment was objectively unreasonable."  *Id.* "A workplace environment is hostile when it is 'permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently pervasive to alter the conditions of the victim's employment.'"  *Id.* (citing *Alaniz v. Zamora–Quezada*, 591 F.3d 761, 771 (5th Cir. 2009)).  While verbal intimidation, ridicule, and insults may be sufficiently severe or pervasive to support a hostile work environment claim, simple teasing, offhand comments, and isolated incidents, unless extremely serious, do not amount to discriminatory changes in the terms and conditions of employment.  *See DeAngelis v. El Paso Mun. Police Officers Ass'n*, 51 F.3d 591, 593 (5th Cir.

1995), *Hockman v. Westward Communications, LLC*, 407 F.3d 317, 328 (5th Cir. 2004).

The complained-of conduct must also be objectively and subjectively offensive, i.e. "not only must a plaintiff perceive the environment to be hostile, but it must appear hostile or abusive to a reasonable person." *Dediol*, 655 F.3d at 441 (citing *EEOC v. WC&M Enters.*, 496 F.3d 393, 399 (5th Cir. 2007)). To determine whether conduct is objectively offensive, a court should consider the totality of the circumstances, "including: '(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or merely an offensive utterance; and (4) whether it interferes with an employee's work performance.'" *Id.*

Defendant argues that the actions that form the basis of Plaintiff's hostile work environment claim are not sufficient to survive summary judgment because they were not based on Plaintiff's age. (Mot. Br., pp. 2-29.) This argument relates to the second step of the hostile environment framework which requires that the harassment, either through words or actions, be based on age. *See Dediol*, 655 F.3d at 441. Plaintiff offers the following as evidence of harassment: on one occasion, Cumbie, Anguiano, and Dawson came rushing into the lunch room and surrounded her, but she excused herself and left the lunchroom; and that Cumbie would look or peep at her, would follow her to the restroom and go to the stall next to hers while slamming the door, and would have lunch in the lunch room at the same time as her. (Mot. App., pp. 9-12, 36-39.) There is no evidence that these actions were taken based on her age.

Defendant also argues that the two comments made by Cumbie, although related to her age, were not sufficiently severe or pervasive to support a hostile work environment claim. (Mot. Br., pp. 27-28.) At worst, the comments are nothing more than simple teasing, offhand comments, or isolated incidents that are not serious enough to amount to discriminatory changes in the terms and

conditions of Plaintiff's employment.  *See DeAngelis*, 51 F.3d at 593; *Hockman*, 407 F.3d at 328.

The Fifth Circuit has found more egregious comments insufficient to support a hostile work

environment claim.  *See Moody v. U.S. Sec. of the Army*, 72 F.App'x 235, 238–39 (5th Cir. 2003)

(age-related comments and questions such as "Granny, have you not got anything to do," "see that

old woman and she will take care of you," "old woman, when are you going to retire and go home

so someone younger can have a job?" and "Granny, when are you going to retire and let someone

younger have a job?" were not sufficiently severe or pervasive to alter the conditions of plaintiff's

employment and create an abusive work environment).  Defendant has met its initial burden.

The burden now shifts to Plaintiff to create a genuine material fact issue with respect to her

hostile work environment claim.  Plaintiff compares the conduct in this case to conduct in *Mackey*

*v. Children's Medical Center of Dallas*, 2006 WL 2713788 (N.D. Tex. Sept. 22, 2006) and *Walker*

*v. Thompson*, 214 F.3d 615 (5th Cir. 2000).   In *Mackey*, there were allegations that the supervisor

caller the plaintiff a liar, asked her to lighten her lipstick, and shook her finger in her face; a co-

worker called her biracial kids "oreos" and "half-breeds" and said she must like "big black d***";

a co-worker cursed about her husband calling and said she would "do something to him"; and the

supervisor confronted her husband about coming to her work premises and stated that the plaintiff's

interracial marriage was an embarrassment to the hospital.  *See Mackey*, 2006 WL 2713788, at

**12–16.  In *Thompson*, there were allegations of comments in the workplace comparing blacks to

slaves and monkeys, derisive remarks regarding African-American hair, a statement by the manager

that any race was acceptable except African-Americans, conversations in which the term N*****

was used, and comments by the manager that the vice-president did not want two African-American

women talking to each other.  *See Thompson*, 214 F.3d at 622–26.  The conduct alleged in this case

- 18 -

does not in any way compare with the conduct alleged in *Mackey* and *Thompson*.

Considering the frequency of the alleged discriminatory conduct, its severity, whether it was physically threatening or humiliating, or merely an offensive utterance, and whether it interfered with Plaintiff's work performance, there is no genuine material fact issue with respect to Plaintiff's hostile work environment claim. *See Dediol*, 655 F.3d at 441. Summary judgment should therefore be granted in favor of Defendant.

## VI.  RETALIATION UNDER TITLE VII AND THE ADEA

Defendant also argues that Plaintiff can neither make a *prima facie* case of retaliation under Title VII and the ADEA, nor overcome its legitimate non-retaliatory reason with evidence of pretext. (*See* Mot. Br., pp. 30-33.)

### A.  Analytical Framework

Title VII and the ADEA make it unlawful for employers to retaliate against an individual because she has opposed any practice made an unlawful employment practice by the relevant statutes, or because she has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the relevant statute. *See* 42 U.S.C. § 2000e–3(a); 29 U.S.C. § 623(d). Retaliation claims under both Title VII and ADEA are analyzed under the familiar *McDonnell Douglas* burden-shifting framework. *See Grizzle v. Travelers Health Network, Inc.*, 14 F.3d 261, 267 (5th Cir. 1994); *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002). A plaintiff establishes a *prima facie* case of retaliation by showing that: (1) she engaged in activity protected by Title VII or the ADEA; (2) an adverse employment action occurred; and (3) there was a causal connection between the protected activity and the adverse action. *See id*. Once the plaintiff establishes a *prima facie* case of retaliation, the burden of production shifts to the defendant to

- 19 -

proffer a non-retaliatory reason for its action.  *See id.*  If the defendant meets its burden, the plaintiff

must then offer sufficient evidence to create a genuine issue of material fact that the defendant's

reason is not true, but a pretext for retaliation.  *Id.*  Under Title VII, a plaintiff may also meet her

burden by showing that the defendant's reason, while true, is only one of the reasons for its conduct,

and another motivating factor is the plaintiff's protected activity.  *Cothran v. Potter*, 2010 WL

1062564, at *5 (N.D. Tex. Mar. 22, 2010); *see also Smith v. Xerox Corp.*, 602 F.3d 320, 329–30 (5th

Cir. 2010).[5]

## B. *Prima Facie* Case

Defendant argues that Plaintiff cannot present a *prima facie* case of retaliation because she

was not subjected to an adverse employment action.  (Mot. Br. at 31-32.)  It is well-established that

to be actionable, an employment action must be "materially adverse" to a reasonable employee,

which in the retaliation "context means it well might have dissuaded a reasonable worker from

making or supporting a charge of discrimination."  *Burlington N. & Santa Fe Ry. Co. v. White*, 548

U.S. 53, 68, (2006) (citation and internal quotation marks omitted). The action must be materially

adverse in order "to separate significant from trivial harms." *Id.*

As discussed, the evidence offered by Defendant shows that Plaintiff resigned from her

position and was not constructively discharged.  To the extent Plaintiff is offering the Summary of

Discussion as an adverse employment action, Defendant presents evidence showing that it was only

an informal performance management tool, was not placed in her personnel file, and did not impact

---

[5]  Highlighting the differences between Title VII and the ADEA, the Supreme Court has recently held that the ADEA does not authorize a mixed-motive age discrimination claim.  *See Gross v. FBL Fin. Servs., Inc.*, 129 S.Ct. 2343, 2349-53 (2009).  The holding has been applied to preclude a mixed-motive ADEA retaliation claim.  *See Barton v. Zimmer, Inc.*, 662 F.3d 448, 445–56 (7th Cir. 2011) (under the ADEA, retaliation must be a but-for cause of a materially adverse action, not merely a contributing factor).

her compensation, job duties, and benefits. (Mot. App., pp. 18, 20.) Given these facts, the Summary of Discussion would not have dissuaded a reasonable person from making or supporting a charge of discrimination. *See DeHart v. Baker Hughes Oilfield Operations*, Inc., 214 F.App'x 437, 442 (5th Cir. 2007) (a written warning to an employee, allegedly for insubordination, for being argumentative, and for excessive absenteeism, would not have dissuaded a reasonable worker from making or supporting a charge of discrimination; there were colorable grounds for the warning, and the warning did not in fact dissuade a charge of discrimination by the employee).

To the extent that Cumbie's alleged actions and comments form the basis of the retaliation claim, they are nothing more than "petty slights, minor annoyances, and simple lack of good manners" that would also not dissuade a reasonable employee from making or supporting a charge of discrimination. *See White*, 548 U.S. at 68. Because there is no genuine material fact issue that Plaintiff suffered an adverse employment action, Defendant is entitled to summary judgment on her retaliation claim.

## C.  Legitimate Non-Retaliatory Reason

Even if there was a genuine material fact issue on all of the elements of Plaintiff's *prima facie* case, as before, Defendant offers evidence showing that there was a legitimate non-retaliatory reason for any adverse action. (*See* Mot. Br., p. 33.) The evidence shows that any adverse action was taken because of Plaintiff's insubordinate conduct and her refusal to accept constructive criticism from QA/QC personnel and her supervisor regarding her work production and quality.

## D.  Pretext/Mixed Motives

Finally, Plaintiff has not offered any evidence of pretext or mixed motives with respect to her retaliation claim. (*See* Resp. Br, pp. 24-25.)

For the reasons discussed, Defendant is entitled to summary judgment on Plaintiff's retaliation claim under Title VII and the ADEA.[6]

## VII.  RECOMMENDATION

Defendant's motion for summary judgment should be **GRANTED**.  Plaintiff's race and gender discrimination claims under Title VII should be **DISMISSED without prejudice** for failure to exhaust administrative remedies.  Her retaliation claim under Title VII, her discrimination claim under § 1981, and her discrimination, harassment /hostile work environment, and retaliation claims under the ADEA, should be **DISMISSED with prejudice**.

**SO RECOMMENDED** on this 10th day of February, 2012.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[6] Plaintiff's response brief, filed by counsel, does not contend that Plaintiff is asserting a retaliation claim under § 1981.  (*See* Resp. Br., pp. 9-10, discussing only discrimination claim under § 1981).  Even if her *pro se* complaint could be liberally construed as asserting a retaliation claim under § 1981, the claim would fail for the same reasons as her Title VII retaliation claim.  *See Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004) (analyzing retaliation claim under Title VII and § 1981 under the same burden-shifting framework).  To the extent that Plaintiff is asserting a § 1981 retaliation claim, the court should *sua sponte* grant summary judgment in favor of Defendant.  *See* Fed. R. Civ. P. 56(f) ("After giving notice and a reasonable time to respond, the court may: (1) grant summary judgment for a nonmovant; (2) grant the motion on grounds not raised by a party; or (3) consider summary judgment on its own after identifying for the parties material facts that may not be in genuinely in dispute.").

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).


IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE